IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:23-cv-00249-MR

| | |
|---|---|
| ANDREA POOLE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **MEMORANDUM OF** |
| vs. ) | **DECISION AND ORDER** |
| ) | |
| MARTIN O'MALLEY,[1] ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**THIS MATTER** is before this Court on Plaintiff's appeal of the Commissioner's decision denying her social security benefits. The parties have fully briefed this issue. [See Docs. 6; 9].

**I.  PROCEDURAL HISTORY**

On July 1, 2020, Andrea Poole ("Plaintiff") filed an application for a period of disability benefits and supplemental security income under Titles II and XVI of the Social Security Act (the "Act"), initially alleging an onset date of November 13, 2001. [Transcript ("T.") at 85, 109]. Plaintiff later amended her alleged onset date to July 1, 2020. [Id. at 23, 50-54]. Her claims were

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley is hereby substituted for Kilolo Kijakazi as the defendant in this action.

denied on November 24, 2020, and denied upon reconsideration on September 27, 2021. [Id. at 23]. At Plaintiff's request, a hearing was held before an Administrative Law Judge (the "ALJ") on June 29, 2022. [Id.]. On November 3, 2022, the ALJ issued a written decision denying Plaintiff benefits. [Id. at 39]. The Appeals Council denied Plaintiff's request for review on July 5, 2023, thereby making the ALJ's decision the final of the Commissioner. [Id. at 1]. Plaintiff has now exhausted all administrative remedies and this case is ripe for review pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

This Court's review of a final decision of the Commissioner is limited to (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). "When examining [a Social Security Administration] disability determination, a reviewing court is required to uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." Bird v. Comm'r of Soc. Sec. Admin., 699 F.3d 337, 340 (4th Cir. 2012). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Johnson v. Barnhart, 434 F.3d

650, 653 (4th Cir. 2005) (internal quotation marks omitted). "It consists of more than a mere scintilla of evidence but may be less than a preponderance." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation marks omitted).

"In reviewing for substantial evidence, [this Court should] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." Johnson, 434 F.3d at 653 (internal quotation marks and alteration omitted). Rather, "[w]here conflicting evidence allows reasonable minds to differ," this Court defers to the ALJ's decision. Id. (internal quotation marks omitted). To enable judicial review for substantial evidence, "[t]he record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013). It is the duty of the ALJ to "build an accurate and logical bridge from the evidence to his conclusion." Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (citation omitted). "Without this explanation, the reviewing court cannot properly evaluate whether the ALJ applied the correct legal standard or whether substantial evidence supports his decisions, and the only recourse is to remand the matter for additional investigation and explanations." Mills v. Berryhill, No. 1:16-cv-00025-MR,

2017 WL 957542, at *4 (W.D.N.C. Mar. 10, 2017) (Reidinger, J.) (citing Radford, 734 F.3d at 295).

## III. THE SEQUENTIAL EVALUATION PROCESS

A "disability" entitling a claimant to benefits under the Act, as relevant here, is "[the] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Administration Regulations set out a detailed five-step process for reviewing applications for disability. 20 C.F.R. §§ 404.1520, 416.920; Mascio v. Colvin, 780 F.3d 632, 634 (4th Cir. 2015). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden is on the claimant to make the requisite showing at the first four steps. Id.

At step one, the ALJ determines whether the claimant is engaged in substantial gainful activity. If so, the claimant's application is denied regardless of the medical condition, age, education, or work experience of the claimant. Id. (citing 20 C.F.R. § 416.920). If not, the case progresses to step two, where the claimant must show a severe impairment. If the claimant

4

does not show any physical or mental deficiencies, or a combination thereof, which significantly limit the claimant's ability to perform work activities, then no severe impairment is established, and the claimant is not disabled. Id.

At step three, the ALJ must determine whether one or more of the claimant's impairments meets or equals one of the listed impairments ("Listings") found at 20 C.F.R. § 404, Appendix 1 to Subpart P. If so, the claimant is automatically deemed disabled regardless of age, education, or work experience. Id. If not, before proceeding to step four, the ALJ must assess the claimant's residual functional capacity ("RFC"). The RFC is an administrative assessment of "the most" a claimant can still do on a "regular and continuing basis" notwithstanding the claimant's medically determinable impairments and the extent to which those impairments affect the claimant's ability to perform work-related functions. Social Security Ruling ("SSR") 96-8p; 20 C.F.R. §§ 404.1546(c), 404.943(c), 416.945.

At step four, the claimant must show that his or her limitations prevent the claimant from performing his or her past work. 20 C.F.R. §§ 404.1520, 416.920; Mascio, 780 F.3d at 635. If the claimant can still perform his or her past work, then the claimant is not disabled. Id. Otherwise, the case progresses to the fifth step where the burden shifts to the Commissioner. At step five, the Commissioner must establish that, given the claimant's age,

5

education, work experience, and RFC, the claimant can perform alternative work which exists in substantial numbers in the national economy. Id.; Hines v. Barnhart, 453 F.3d 559, 567 (4th Cir. 2006). "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations." 20 C.F.R. §§ 404.1520, 416.920; Mascio, 780 F.3d at 635. If the Commissioner succeeds in shouldering his burden at step five, the claimant is not disabled and the application for benefits must be denied. Id. Otherwise, the claimant is entitled to benefits.

## IV. THE ALJ'S DECISION

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date, July 1, 2020. [T. at 26]. At step two, the ALJ found that from her alleged onset date Plaintiff had suffered from severe impairments, including bipolar disorder, generalized anxiety disorder, Type I diabetes mellitus, asthma, obstructive sleep apnea, lumbar degenerative disc disease, migraine headache disorder, and obesity. [Id.]. At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the Listings. [Id. at 27]. The ALJ then determined that between her alleged onset date

and the date of the ALJ's decision that Plaintiff had the residual functional capacity to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: frequently climb ramps and stairs, stoop and balance; never climb ladders, scaffolds and ropes; no operation of motor vehicle for commercial purposes; occasional exposure to noise equal to that of traffic noise; occasional exposure to fumes, dust and poor ventilation; simple tasks; occasional public interaction; occasional changes in a routine work setting.

[Id. at 31].

At step four, the ALJ determined that Plaintiff had no past relevant work experience. [Id. at 37]. However, at step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC that Plaintiff could perform other jobs that exist in significant numbers in the national economy, such as cleaner, labeler, and small parts assembler. [Id. at 37-38]. Thus, the ALJ concluded that Plaintiff was not "disabled," within the meaning of the Act, between her amended alleged onset date and the date of the ALJ's decision. [Id. at 38].

## V. DISCUSSION[2]

As one of her arguments on appeal, Plaintiff contends that the ALJ failed to "make specific findings regarding how often [Plaintiff] would be absent from work due to the frequency and severity" of her chronic migraines. [See Doc. 6 at 4-9].

Social Security Ruling 96-8p explains how adjudicators should assess a claimant's RFC, instructing that the "assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions" listed in the regulations.[3] SSR 96-8p; see also Mascio, 780 F.3d at 636 (finding that remand may be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review) (citation omitted).

---

[2] Rather than set forth a separate summary of the facts in this case, this Court has incorporated the relevant facts into its legal analysis.

[3] The functions listed in the regulations include the claimant's (1) physical abilities, "such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching);" (2) mental abilities, "such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, coworkers, and work pressures in a work setting;" and (3) other work-related abilities affected by "impairment(s) of vision, hearing or other senses, and impairment(s) which impose environmental restrictions." 20 C.F.R. § 416.945.

In formulating the RFC, an ALJ is required to "consider limitations and restrictions imposed by all of an individual's impairments . . . .'" SSR 96-8p. More specifically, rule 96-8p provides:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record.

[Id.]. "Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." [Id.].

The ALJ stated the following in her decision regarding Plaintiff's migraines:

> Looking at SSR 19-4p for migraine headaches, we do have a diagnosis of chronic migraines with a significant reduction in migraine frequency on Botox therapy in combination with her other migraine preventatives (Exhibit 19F/5-6; 17F/5, 166). April 2022 treating records show that she is well controlled on current dose of Topamax and Botox (Exhibit 17F/2, 3; 17F/5, 166). The claimant's migraine headache disorder was established by objective medical evidence (signs and laboratory findings) and while not stated by any physician as to be disabling, was considered in terms of its possible effects on the claimant's ability to work and the ability to perform

9

> activities of daily living. The Administrative Law Judge is required to consider headache disorder in determining whether a claimant has medically determinable impairments that are severe, whether those impairments meet or equal any listing, and determining the claimant's residual functional capacity. Headache disorder is considered severe when, alone or in combination with another medically determinable impairment, it significantly limits an individual's physical or mental ability to do basic work activities (SSR 19-4p). I have found the claimant's headache disorder/migraine to be severe, but the signs, symptoms, and laboratory findings are not of such severity as found in any listing, including but not limited to Section 11.00.

[T. at 35]. The ALJ also restricted the Plaintiff's RFC to "occasional exposure to noise equal to that of traffic noise" to account for her migraines. [Id. at 36].

In support of her conclusion that Plaintiff's migraines are well controlled, the ALJ cites evidence in the record suggesting that as of May 24, 2022, Plaintiff had experienced "a greater than 50% reduction in migraines" since she started receiving Botox injections on December 2, 2021.[4] [See id. at 2945, 3252, 3414]. The ALJ also states, however, that Plaintiff suffered between 15-20 migraines per month prior to beginning this treatment. [Id. at 32]. Thus, while the medical evidence cited by the ALJ suggests that Plaintiff suffered *fewer* migraines after beginning Botox, it also

---

[4] The ALJ further cites to other medical evidence dated April 14, 2022, generally stating that Plaintiff's migraines were well controlled by Botox and Topomax as of that date. [T. at 3088-91].

allows for the possibility that she was still suffering as many as 7-10 migraines per month. Indeed, when Plaintiff testified before the ALJ on June 29, 2022—seven months after beginning Botox—she indicated that she was still suffering around five or six "debilitating" "lay in bed in a dark room migraines[,]" per month.[5] [Id. at 48, 66]. The ALJ does not discuss these residual migraines in her decision, nor does she make any specific findings regarding their frequency, severity, or the impact that they might have on Plaintiff's ability to work. The failure of the ALJ:

> to reach an express conclusion in the first instance on the potentially dispositive issue of whether the frequency and severity of [Plaintiff's residual] headaches would cause her to be absent from work more than [one to two days][6] a month—or to explain how, despite any potential absences, the evidence supported [her] finding that the limitations included in the RFC sufficiently accounted for [Plaintiff]'s impairments—is an error of law that necessitates remand.

---

[5] Plaintiff indicated before the ALJ that she suffered residual migraines primarily during the "month-and-a-half" period between when her Botox injections start "wearing off" and when she received another round of injections. [T. at 66]. Accordingly, the Commissioner argues that her residual migraines can be eliminated by increasing the frequency of her injections, and that her treatment providers have agreed to try this. [Doc. 9 at 9-10]. However, the Commissioner's argument is purely conjectureal, as there is no evidence in the record that this treatment has as of yet successfully eliminated Plaintiff's migraines. Moreover, the mere possibility that *prospective* treatment could alleviate Plaintiff's migraines in the future is no basis for deciding that Plaintiff is not *presently* disabled.

[6] The Vocational Expert testified that if Plaintiff were off task more than 10 percent of a workday or absent from work more than one to two days per month that she would not be competitively employable. [T. at 77].

Woody v. Kijakazi, No. 22-1437, 2023 WL 5745359, at *1 (4th Cir. Sept. 6, 2023) (internal quotation marks omitted).

Additionally, even if the evidence of record had demonstrated that Plaintiff's residual migraines were not disabling as of the date of her hearing before the ALJ, Plaintiff would still be entitled to benefits if she established that she was disabled for *any* consecutive twelve-month period between her alleged onset date and the date of her hearing. See Ritchie v. Saul, No. 1:19-cv-03302-JMC, 2021 WL 168443, at *3 (D. Md. Jan. 19, 2021); see also 42 U.S.C. § 423(d)(1)(A); Nicole C. v. Berryhill, No. BPG-18-2828, 2019 WL 3935183, at *3 (D. Md. June 24, 2019) ("A claimant may be entitled to a closed period of disability if the evidence shows he or she was disabled . . . for a continuous period of not less than 12 months, but based on the evidence is no longer disabled . . . at the time of adjudication.") (quoting SSA Program Operations Manual System § 25510.001).

Here, the ALJ states in her decision, and cites evidence suggesting, that Plaintiff's migraines were "well controlled" as a result of her Botox treatment by the spring of 2022. However, Plaintiff only began this treatment on December 2, 2021. [T. at 3252]. Before this treatment, as noted above, the ALJ states that Plaintiff was suffering 15-20 migraines per month. [Id. at 32]. The ALJ does not at all discuss what impact these regular migraines

had on Plaintiff's ability to perform sustained work activities between her amended alleged onset date, July 1, 2020, and the time her migraines became "well controlled" by treatment. "Accordingly, remand is appropriate to allow the ALJ to . . . consider whether [Plaintiff] should be eligible for a closed period of disability during any period at or exceeding twelve months between the alleged onset date and the date [her migraines became well controlled]." Sykes v. Comm'r, Soc. Sec., No. ELH-16-898, 2017 WL 35436, at *2 (D. Md. Jan. 4, 2017).

## VI. CONCLUSION

In sum, on remand the ALJ should make specific findings regarding how frequently Plaintiff is still suffering migraines and should consider whether they will result in her missing work more than one to two days per month. Additionally, the ALJ should consider whether Plaintiff is entitled to a closed period of disability.[7]

## ORDER

**IT IS, THEREFORE, ORDERED** that, pursuant to the power of this Court to enter judgment affirming, modifying, or reversing the decision of the Commissioner under Sentence Four of 42 U.S.C. § 405(g), the decision of

---

[7] In light of this decision, Plaintiff's other arguments on appeal need not be addressed at this time. However, they may be addressed at the administrative level on remand.

13

Case 1:23-cv-00249-MR    Document 10    Filed 04/01/24    Page 13 of 14

the Commissioner is **REVERSED,** and the case is hereby **REMANDED** for further administrative proceedings consistent with this opinion. A judgment shall be entered simultaneously herewith.

**IT IS SO ORDERED.**

Signed: April 1, 2024

Martin Reidinger
Chief United States District Judge